

FILED

JUL 2 0 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

# UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

**DANIEL F. SLONAKER #3469200,** Pro-Se,

        Plaintiff,

**vs.**

    **CIVIL ACTION NO.** <u>2:18-cv-1173</u>

**JEAN KENNEDY,** D.D.S.
**TAMMY MCGRAW,** Counselor
**PAM GIVEN,** Current Medical Administrator
**SANDRA MAY,** Physician Assistant
**DANIEL CONN,** President
**RALPH TERRY,** Warden
**BETSY JIVIDEN,** Commissioner

        Defendant(s).

## JURISDICTION

    Proper venue for this civil action is determined to be in the United States District Court for the Southern District of West Virginia where the most of the medical / dental defendants work and/or reside in their respective places of employment in either Fayette or Kanawha counties. As well as the plaintiff is presently housed under the care and custody of the Warden Ralph Terry of the Mt. Olive Correctional Complex. Plaintiff has been an inmate of M.O.C.C. since 10/2/2014, plus he has been a prisoner of the state of West Virginia, (within the West Virginia Division of Corrections). As well as the Regional Jail(s) System as he has been continuously found to be therein since his most recent of incarceration from February 2010.

page 1 of 22

## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

**DANIEL F. SLONAKER #3469200,** Pro-Se,
                         Plaintiff,
**vs.**                                              CIVIL ACTION NO.   **2:18-cv-1173**

**JEAN KENNEDY,** D.D.S.
**TAMMY MCGRAW,** Counselor
**PAM GIVEN,** Current Medical Administrator
**SANDRA MAY,** Physician Assistant
**DANIEL CONN,** President
**RALPH TERRY,** Warden
**BETSY JIVIDEN,**   Commissioner
                         Defendant(s).

### NAMES OF PARTIES / ADDRESSES

**SOLE DEFENDANT:**     **DANIEL F. SLONAKER #3469200,** Pro-Se,
                        MT. OLIVE CORRECTIONAL COMPLEX
                        1 MOUNTAINSIDE WAY / P.O. BOX 5
                        MT. OLIVE,   25185-1000

**MEDICAL DEFENDANT(S):**

**JEAN KENNEDY, D.D.S.  EMPLOYED BY** / AT ADDRESS:
**PAM GIVEN, Current Medical Administrator, EMPLOYED BY** / AT ADDRESS:
**SANDRA MAY, Physician Assistant, EMPLOYED BY** / AT ADDRESS:
ALL 3 AFORE NOTED MEDICAL DEFENDANTS **EMPLOYED BY** / AT ADDRESS:
**WEXFORD HEALTH SOURCES, INC. AND**
**TAMMY MCGRAW, Counselor at Pine Hall** / AT ADDRESS:
**RALPH TERRY, Warden of M.O.C.C.** / AT ADDRESS::
MT. OLIVE CORRECTIONAL COMPLEX
1 MOUNTAINSIDE WAY / P.O. BOX 5
MT. OLIVE, 25185-1000

**DANIEL CONN, President, Chief Executive Officer of:**
**WEXFORD HEALTH SOURCES, INC.**
501 HOLIDAY DRIVE / SUITE 3
PITTSBURG, PA   15220-1000

**BETSY JIVIDEN, Commissioner of WEST VIRGINIA DIVISION OF CORRECTIONS**
                        1409 GREENBRIAR STREET
                        CHARLESTON, WV   25311

page 2 of 22

## I. PREVIOUS LAWSUITS:

The plaintiff had previously begun another civil action in the Charleston, West Virginia State Court dealing with another similar [albeit different] claim of denial of medical care in the year 2002 that was removed to the U. S. District Court for the Northern District of West Virginia, where the St. Mary's Correctional Center; the plaintiff was then housed at in Pleasants County, West Virginia, was located within. As the sole plaintiff in that civil action, Daniel F. Slonaker [then #27189] acting Pro-Se, alleged medical / dental department personnel were culpable in providing less than adequate medical / dental care; where a Docket Number and a Magistrate Judge were assigned to preside over the proceedings. As best the plaintiff recalls, I received an unfavorable decision, and the case was closed sometime in 2005. Your plaintiff had also begun a similar of different medical torte in the United States District Court for the Southern District of West Virginia as he was and still expects to be housed at the Mt. Olive Correctional Complex where he began another 42 U.S.C. § 1993 Civil Action # 2:14-cv-28531 where the plaintiff contended his pinched sciatic nerve and arthritic condition(s) should had been at least confirmed by M.R.I. diagnosis; but the plaintiff voluntarily dismissed that case in the year 2016.

## II. PRESENT PLACE OF CONFINEMENT:

The plaintiff is presently incarcerated at the Mt. Olive Correctional Complex. There is a prison grievance procedure [that as best the plaintiff believes] is similar to all other West Virginia State Prison Facilities that uses the same state prisoner Grievance Procedure: of being allowed to submit no more than one extra page, in addition to the standard single page format of the grievance [as is required to be used] for all prisoners; as the only approved procedure for prisoners to be able to address their complaints about condition(s) of confinement to their respective Unit Managers. As

with all the plaintiff's complaints, he has always provided them to his appropriate Unit Manager(s); as they are then responsible to tender them to the appropriate [Medical] Supervisors in my case.

In the petitioners instant case, I have presented the facts relating to my complaint in as concise as manner; to properly inform the medical / dental departments of what all I believe has been going on with my body / teeth; in order to not waste their and/or my time dealing with non-essential information not pertinent to the issues at hand. To interject, I had 3 years of Mechanical Drawing in High School that comes in handy to be able to fill out the 5 [where I sometimes add another line or 2 depending on how complex the issues sometimes tend to become] perhaps 1/7 of inch line widths; as prisoners are required to write within to be able to describe their medical / dental issues as scintillating and in totality as possible .

I dutifully fill out the form, particularly noting at the Part A at top as to whether my issue(s) are Medical, or Dental, or in fact sometimes are both Medical / Dental Emergency problems, (as in the petitioner's instant case); where he probably wouldn't had come down with a debated medical issue flu; if it wasn't for the fact that his bodies normally strong immune system had been so badly compromised from his having to fight 3 bouts of infection. All simply due to where an obvious offending tooth had been intentionally disregarded to be pulled. Even though Mt Olive's Dental Department's Supervisor has been given ample opportunity(s) to do so, not once, nor twice, but at least times, (after the plaintiff had to walk through the process to be simply be seen), for her to please honor the plaintiff's repeated request(s). Towards his noted admitted motivation that he will then be able to have a top denture partial plate fitted and made after his noted last top right quadrant tooth eventually will be pulled.

page 4 of 22

## STATEMENT OF CLAIM

The plaintiff might debated not even have a Federal case against the main state actor Jean Kennedy D.D.S., but for her many blatant vindictive and sadistic actions as rise above and beyond the necessary requirement as is near universally recognized: where a plaintiff must be able to establish deliberate indifference on the part of the defendant(s) in order to prevail in this and every other complaint of denial of proper medical / dental care type civil action.

Your plaintiff will reveal Jean Kennedy to be so intentionally malicious that she could well be seen as a new standard by which cruel and inhumane treatment [barred by the 14th Amendment to the United States Constitution] will be evidenced in this civil action; as he challenges his deplorable condition(s) of confinement. The dentist Kennedy has contentiously acted with reckless disregard for not only the plaintiff's dental health, (but also for his general welfare), rising up to and threatening his very life as she has established she will waste any and all amounts of hers and the plaintiff's time and energy in her endeavors to deny the plaintiff his rights to proper dental care. She further flaunts her position of authority, using the most abusive, degrading, immature and coarse language in order to generate similar immature of behaviors from her patients; anything to avoid doing the necessary, productive dental work as she is contracted by Wexford Health Sources, Inc. [under the umbrella of the W.V.'s Division of Corrections] to provide for all her patients. Most notably the poor huddled masses of prisoners at M.O.C.C., she has no shame in showing her too obvious disdain for: although on her rare good days I have managed to keep things light and have entered into some lively Christian of conversation with her. Unfortunately, this rarely lasts and we must return to business as usual where inmates as myself receive as little proper dental care as possible. The plaintiff has always had difficulty obtaining even the minimum of proper medical /

page 5 of 22

dental care that he has rarely [until the last possible moment] been afforded.

Albeit it is not the intention of the plaintiff to set forth his claim(s) by merely incorporating his exhibit(s) by reference as a means of establishing his claim(s), his complaint would debated lack a great deal of credibility if the exhibit(s) he has chosen to use were not permitted to be incorporated in his civil action complaint . As the medical / dental defendant(s) would certainly rather see all exhibits to be [wrongly] disallowed altogether; considering how deliberately indifferent and negligent  they reveal Mt. Olive Correctional Complex and Wexford Health Sources' contracted medical / dental staff are to the plaintiff specifically.

Your plaintiff now begins to set forth his claim of showing just how unrealistic and/or indifferent the dental Supervisor Kennedy was and is to the plaintiff's medical and dental need(s), starting from around a year and a half ago, culminating in important Grievance 17-MOCC-ST- 55 of 3/14/17. Jean Kennedy orally stated to the plaintiff how he "should try to keep what remaining teeth he had of 16 [10 bottom, 6 top] at that time. Not taking into consideration as he had previously explained to her how he had extensive Orthodontic work done up to his 25 years old time; when he agreed to bite into a 'bionator' [retaining] mouthpiece, (after he had his proper bite developed), meant to develop new jawbone joints [as were intended to be activated] as he bit down into the retainer. That sadly culminated in the plaintiff habitually grinding his teeth, especially at nights as he agreed to do; instead of biting into it talking like a ventriloquist as his orthodontist wanted him to do in the daytime. So, the plaintiff had 4 top teeth as were so badly ground down below the gum line, there was no chance of them being salvageable or useable. Nevertheless, [see Exhibit 1 page 17 and 18 ,of Medical Administrator Donna Warden's conclusion after reviewing the plaintiff's dental and medical records] siding with Jean Kennedy's opinion that "my current condition does not indicate a valid reason for full extraction of all my teeth and denture replacement". I suspect her and Jean

Kennedy's suggestion that I could possibly obtain and pay in advance for an outside vendor approved by the West Virginia Division of Corrections to extract my teeth was meant to discourage any further discussion about proper treatment, as I do not have the sort of money they were talking about accessible to me in my account to pay for such work. Especially as I am aware that being a ward of the state as I obviously am; they are responsible to provide for the health care and welfare of my person. Please bear with me to interject how my main motivation in obtaining dentures is not simply cosmetic to improve my looks, but mainly to be able to one day be able to chew my food without pain of lower 10 present teeth mating with near bare upper gums.

Allow me to sum up to relate how some 16 months later, I have had 3 of the 4 worst ground down below the gum line pulled by Jean Kennedy, only after each had exposed roots to had become infected. Antibiotics had to be prescribed to calm the pressure and accompanying pain. I have one conical shaped sharp honed edge cut at a roughly 45 degree angle I was able to loosen and pull myself, (I am able to present as evidence to show just how compromised of teeth I had), remember how Jean Kennedy and Donna Warden suggested I should try to keep! See Exhibit 2 on page 15 : relating what the plaintiff was dealing with in his 'Emergency Dental' Request of 5/10/17.

The plaintiff had little choice but to tolerate having the last 2 upper right quadrant teeth become more and more compromised until he submitted an 'Emergency Dental Request' dated 6/10/18 [see Exhibit 3 on page 20 ] complaining of excruciating pain from pressure of infection flaring [due to having yet another exposed root] most likely contaminated from dirty drinking water from a near by water main break around that time the most likely culprit further aggravating that existing condition. Then on 6/12/18 plaintiff sent another 'Emergency Medical / Dental' Request, begging for someone, anyone to please prescribe an antibiotic to help boost the plaintiff's immunity system, (to help fight the continued pain and/or  pressure of infection as was felt / noted to be

spreading to other areas, specifically his right eye socket and nasal areas, beyond the localized area of infection in the plaintiffs' upper jaw, where his last 2 upper right quadrant of compromised teeth are/were located. Plaintiff admits he grew antsy and had a Pine Hall [where he then resided] C.O. posted at that pods desk, to call the dental office in the morning of 6/14/18; where he was kindly informed that the dental department had received his request(s), and that an appointment had been scheduled , without the specifics of when he could be expected to be seen.

Just to reiterate the standard operating of procedure for all medical / dental issues is for the Medical Department to call for an inmate to report to Medical, (where he will firstly have his blood pressure, temperature and weight recorded and be seen by a nurse to be evaluated as to whether in the plaintiff's particular case, antibiotics are indicated to address his obvious infection. Or as more often happens in such a 'emergency dental' case, an inmate usually will be referred to the dental office. Plaintiff admits he became increasingly impatient waiting for Medical to respond to his 2 'Emergency Medical / Dental' request(s) and asked Tammy McGraw [Counselor for his Pine Hall sitting post at the officer's desk relieving C.O. Ritter as was on break] to please call Medical to see if he was scheduled to be seen that 6/15/18 day. Where she related from what medical noted, NO, and further they had no record of any of 3 request(s) I had made in the previous weeks time, and to quit calling! I did at least show Tammy the 3 requests I had made that she guffawed didn't prove I had put them in the medical requests pick-up box, and to get away from the desk! The plaintiff admits he was rather unsettled at everything becoming so stressful, spiraling out of control; but at least [he positively reasoned] he drew inspiration from the fact Dental had related they had received his 'Emergency Medical / Dental Request(s), that even if Medical wanted to be difficult, he could still count on Dental to follow through. Unbeknown to him that Dental had plans to be off all next week the !4th through the 18th! About at the end of his ropes over that weekend of the 16th & 17th ,

page 8 of 22

the plaintiff sent yet another [in hopes would be honored as a new] 'Emergency Medical / Dental Combined Issues request, reiterating plaintiff's desperate need of a antibiotic to be prescribed; to help boost his bodies immunity system to specifically address the infection still localized around the area of his last 2 remaining upper right quadrant teeth. Especially considering as his supply of some 50 Motrin he had relied on to quell the swelling and pain was depleted, and he needed more to be provided by Medical / Dental: as of all ill fortune the internet had to be down at that time, for the Commissary to had to be closed!

The plaintiff is usually a very health conscious of individual and adept at knowing all the solutions to calm infection, everything from vigorous massage of swollen lymph glands to sweating the toxins from his body as needed, (not so strange considering he had to deal with the very same problems of having with body racked with the noted infection(s) 3 times in the last year alone as he herein has already related of his much experience of having to deal with his badly compromised teeth. So much for the plaintiff trying to save what teeth he has, with no valid reason for extraction of all his teeth towards at least a top partial denture device being fitted and made!.

About at wits end, plaintiff reasoned a Grievance was his only last resort of untried proper remedy and so prepared it [relating of his demise of inadequate dental care] 6/18/2018 through our only available and/or approve method of submitting it to my Pine Hall Unit Manager Kelly Hinte [that he must then trust to tender it to the appropriate in this case Medical Administrator Pam Given] as has 5 days to respond to it accordingly. She finally did respond back with a simple answer to plaintiff's grievance about not being seen after 2 "Emergency Medical / Dental request(s) for antibiotics to be prescribed and the 2 compromised teeth to be pulled, and 1 formal written request to be officially placed on the denture waiting list for at least a top partial denture plate to be eventually fitted and made, by noting "He was scheduled to be seen by Medical". The plaintiff's

repeated request(s), grievance was finally honored and he was finally seen on the 26th [2 weeks after he had last been seen by anyone in Medical  / Dental] as records will reveal he was last seen by Medical on the 12th of that June 2018. A usually very helpful nurse Andrea ? had to ask the head nurse ? if an antibiotic was still indicated at that time, where they then both assuaged me that I was referred and would be seen by the dentist that would determine what  I needed where he and was elated to finally be seen by Dental on the June the 26th afternoon. The plaintiff dismissed all caution and took the liberty to ask Jean Kennedy's X-Ray Technician Tina ? To please ask Miss Kennedy if there was any possible way she would consider pulling both of my bad teeth that day; seeing they were the last 2 adjacent, compromised  teeth as would both need to come out in order for a top partial denture to be able to eventually be fitted and made in the distant future? Alas, after Jean Kennedy looked into my mouth a couple of seconds, she mouthed what were to become just as quickly very odious words, that "Nothing was going to happening today", where plaintiff responded with a dumbfounded look and asked "Your kidding right?", where she retorted with an again to become an all too familiar "Do you not comprehend, Do you want a write-up for disobeying an order, Get out of my chair and office, now!"! After I came back to my senses, I talked to my Case Manager Mr. Coleman back at my Pine Hall Unit that said he would call the Health Sources Administrator Pam Givens to note Miss Kennedy's disrespectful and abusive way of handling her patients. That did actually seem to help since the next day on the 27th of June I got another pass from my Pine Hall C.O. as told me to report to another  dental appointment at noon. Sadly enough there had to be an unfortunate development where an inmate Wise had the misfortune to die while undergoing dialysis [about 10:30 that morning] as just happens to be located in a back corner of the dental department that threw everything off that day. Albeit I was X-Rayed about 1:00, seen by Jean Kennedy around 2:00 and once again told the usual [somberly this time] "Nothing was going to happen today". The

next day Thursday the 28th, the plaintiff was scheduled to, and was making a cell move right after the 11:00 count cleared, when he received yet another what I still had hopes for of a productive dental appointment. Where I was then given an only option, (by the X-Ray Tech Tina ?), of which tooth [of the 2 adjacent to each other as both had infection flaring and ebbing between them] I wanted pulled. Confronted with such an ultimatum, plaintiff chose to have the worst of the 2, (most compromised sharp edged back tooth as often cut into his cheek), finally extracted. However, after the initial pressure release of the one tooth alone being pulled, plaintiff deduces the remaining infectious mass had a place to drain out the newly created hole where the extracted tooth was. Nevertheless, starting Friday the 29th evening, Saturday the 30th, and Sunday the 1st of July, the plaintiff had little recourse but eat some 30 Motrin to bring down the swelling, and sent another 'Emergent Medical Dental care Required Request relating verbatim, "I now have full blown infection spreading around my last [upper right] remaining tooth ground down below my gum line, exposed root generating throbbing pain unabated, all the more deteriorating health, with flu set in, threatening my very life. Deliberate indifference, denial of adequate Medical / Dental care to blame: need emergent care to keep from suffering any further indignation". Plaintiff was dutifully seen the next day, on the 2nd of July by Medical by a nurse Cathy ? [he had never been seen by before] as had the task of diagnosing his Medical / Dental needs. He tried to impress upon her just how bad he felt after having to struggle with his 3 bouts of infection in as many weeks, where his death would at least be one less problem for any medical / dental person to not have to deal any further with. Sadly for the plaintiff, even though his regular Dr. Lye [as would most likely provide him the antibiotics he needed to help stave off potential future infection assaults] briefly appeared in the doorway, unfortunately Physician Assistant Sandra May [well known for being uncannily cold and indifferent to all inmates medical / dental issues] had already been summoned by the timid nurse to be able to

look into his mouth. In a deft swoop she closed the door to muffle my stating "There is my regular Doctor Lye that will prescribe me the antibiotics I need". She dutifully noted the white area around my offending tooth, yellow phlem I revealed in my mouth to confirm I was just about over my recent bout of flu, (in response to her telling me to shut up so she could hear if my lungs were still congested), with bottom line being that "I would be referred to the dreaded Dental to dictate as to what I needed. This was becoming a regular daymare, even worse than a nightmare as at least ended when the startled dreamer woke up thankful to realize it was all a bad dream. But here was a worst case scenario with no apparent ending. I was provided  yet another noon pass to report to the dental department that same Monday the 7/2/18 afternoon, where Miss Kennedy directed her X-Ray Technician, who had already confided to me "she had already been having a bad day herself", that I suspect was even made worse as she was directed by Miss Kennedy to take 4 different X-Rays of my poor exposed root of tooth, ground down below the gum line. For Miss Kennedy to finally appear full of fury and boldly declaring, "You have no infection present, and further you and 100 inmates just like you will not dictate as to how and when I will do my job", with the last usual tired of retort to "Get out of my chair [pointing to the door] NOW!

Please forgive me for only now do I feel comfortable to ask, but can not anybody see the pattern here, what I dared not ask Miss Kennedy. But it appears only logical as at least I know I have already had to fight 3 bouts of infection in the last 3 weeks time, that just because it is not obviously present at the times Medical / Dental observes it, does not mean that it is just going to get better, or go away all by itself. In fact, as my tooth further degrades as the root becomes fully exposed, the ensuing infectious mass can actually multiply into a great enough concentration where it is not unheard of for it to  kill people. The Dentist Jean Kennedy's reckless disregard of plaintiff's demise, deliberate indifference toward, as well as obvious intent to inflict as much pain and suffering upon

the plaintiff would not be fully realized and/or understood without the plaintiff's revealing a final piece of shocking evidence. About 2 years time ago [when the plaintiff received a lay-in after having his last of infected top left quadrant teeth extracted] he couldn't help but notice, and asked the dentist Jean Kennedy why she used her dentists' drill to gouge about 4-5 seconds into the backside [creating an indentation] of the adjacent [only decent tooth remaining by itself in that left upper quadrant of his mouth] for the dentist to offer an off hand remark, "To give clearance for the tooth", (but the offending neighboring tooth had already been extracted), to not make any sense. Now, in retrospect, the plaintiff can but request that another independent and unbiased dentist may be contracted and designated by the Court to confirm all as the plaintiff avers and begs to be established as true; that his one remaining top left quadrant tooth was intentionally drilled into by the dentist Kennedy for no other apparent reason but to cause and inflict future pain and suffering upon your plaintiff. In fact, note a 7/14/2018 'Emergency Dental Issues Request [Exhibit 4 on page ___21___] as relates about the problem [unstated how the plaintiff did not notice a cell door was opened, that he turned into, hitting that tooth] sheering that last remaining top left quadrant tooth off 7/13/18, with only about an eighth of an inch of a pen shaped jagged tip [with root exposed] above the gum line remaining. For all to now note how long it will take the dentist Kennedy to address this, (and his last upper right quadrant tooth also ground down [below] his gums [also with root exposed] responsible for his having to suffer 3 bouts of infection already); where the dentist Kennedy has already had 2 opportunities afforded to simply pull the last 1 of still 2 upper right [compromised] and now stub of a left tooth remaining. Before upper dentures can be fitted and made; after a satisfactory amount time for the gums to heal, (of plaintiff suggests at least 4 months), should properly be provided for by the Court as the dentist Kennedy has been known to fit dentures for inmates in as little as 1 months time, far too little of time for the gums to heal to their natural final rested state.

All, as the plaintiff formally requests;  that an Honorable Magistrate Judge will be appointed according to Local Rules of Civil Procedure 72.2,    Under    **Designation of Magistrate Judges** (a) Consent of the Parties  636(c)(1)  Upon consent of the parties, magistrate judges are specifically designated by the district judge to exercise civil jurisdiction pursuant to 28 U.S.C. § 636 (c)(1), and to conduct any and all proceedings in a [non]jury civil matter and order the entry of judgment in the case as [I the] plaintiff formally notes my desire to personally have an appropriate magistrate judge appointed to satisfy his legal interest(s) [with no jury trial formally requested by the plaintiff] in this, his civil action as is now presented for review by a District Court Judge for the Southern District of West Virginia accordingly.

In conclusion, the plaintiff prays, and trusts he should and will be allowed to serve his Complaint(s) and Summon(s) upon all the Medical / Dental and all other named and titled defendant(s) as are named as parties under their Supervisory Liability Status(es) in this civil action. And that any and all witness(es) as may be determined just and proper to be called upon, to specifically help the Court to properly rule upon all the plaintiff's evidence(s) as they are presented. To the end result that they may be fully proved to be true and worthy of monetary and/or all other compensation as requested for by the plaintiff. To mainly discourage Wexford Health Sources, Inc., as well as all the contracted employees under the umbrella of Wexford Health Sources from denying proper medical / dental to any further inmates of Mt. Olive Correctional Complex; notably violating their and specifically the plaintiff's 14th Amendment to the United States and/or West Virginia's Constitutional Right(s) to be free of cruel and inhumane treatment.

## RELIEF

In response to defendant(s) council(s) potential expected future argument, how plaintiffs are nit able to raise issues under Respondent Superior status. Plaintiff thus hereby raises claims under Supervisory Liability concept, where principle element to said actor is [where and when] the Supervisory Official must be demonstrated to have a personal involvement about claim by:

A). Supervisor failing to right the agreed upon wrong.

B). Supervisor created policy to violate plaintiff's civil and [14th Amendment as bans cruel and unusual treatment to be inflicted upon person(s)] by both the United States and West Virginia States Constitutions.

C). Supervisor was deficient in managing subordinates that violated plaintiff's civil and constitutional right(s).

WHEREFORE,  Plaintiff request the Court to grant relief accordingly as follows:

1). Declaring acts and/or omissions as are described in plaintiff's complaint that violate plaintiff's civil and constitutional rights as are secured to him by both the United States and West Virginia's Constitutions. Plaintiff specifically expects a sufficient amount of time to be allowed for his gums to properly heal and be fitted into both upper and lower dentures as timely extraction(s) of not only his last two upper compromised teeth, causing him much suffering, and bottom teeth also.

2). Nominal Damages.

3). Compensatory Damages.

4). Punitive Damages.

5). Plaintiff's Costs In This Civil Action Suit.

6). All Attorneys Fees To Be Paid By The Defendant(s)

7). Any Additional Relief As The Court May Deem Is Just, Proper and Equitable.

## COUNSEL

No one other than the plaintiff, (proceeding Pro-Se). has helped the plaintiff in the preparation of this case. The plaintiff did contact a law firm of Meyers, Ford and Glasser, 120 Capitol Street / Charleston, WV  25339 around a year and a half ago to inquire about another similar of simple medical torte comparable to this case, that they noted they would be hard pressed to even take such a low amount of return case, unless the plaintiff was willing to pay for their actual man hours entailed. Plaintiff has used this specific law firm to help him with another simple personal injury claim [NOT] in this Southern District of West Virginia's Court. Considering most reputable law firms ask up to a third of the actual return to cover their being contracted on a 'Contingency Basis', (being the only way plaintiff can feasibly hope to proceed to have a case presented and litigated), the plaintiff decided he could handle this simple enough of claim, and pocket the full amount of whatever settlement he hopes to realize from the medical / dental defendant(s) employer(s), as he hopes to discourage their future denying any and all other inmates of their necessary and proper medical / dental care.


## VERIFICATION

The undersigned declares under penalty and perjury that he is the sole plaintiff in the afore noted civil action, that he has prepared and presented the information contained in this complaint, that is true and accurate, and/or [to the best of his knowledge] is represented to be true and accurate. Title 28 U.S.C. § 1746 18U.S.C. § 162 § 1631.

Executed at Mt. Olive Correctional Complex this:

7/17/2018
_____
Date

Daniel F. Slonaker #3469200, Pro-Se
_____
Daniel F. Slonaker #3459200, Pro-Se

page 16 of 22

ONE STAPLE ONLY    **APPROVED FOR INMATE VIEWING**    Policy Directive 335.00
01 February 2014
Attachment #2

W.Va. Division of Corrections Inmate Grievance Form    Grievance No. 17 . Mocc . 54 . 55

**RECEIVED**
MAR 1 4 2017

Inmate Name: SLONAKER DANIEL    DOC#: 3469200    Date of Grievance: 3/14/2017    217

State Nature of Grievance / Issue to be addressed (Note 1 issue per grievance be concise file with Unit Manager **NO WRITING ON BACK**)

I HAVE BADLY WORN TEETH (SOME 4 OF 16 I HAVE ALTOGETHER), WITH ... ROOTS ... NEAR EX-
POSED AS THEY ARE LOWER THAN THEIR NEIGHBORING GUM LINE AS THE M.O.C.C.
DENTAL DEPARTMENT SUPERVISOR JEAN KENNEDY RUFUSES TO AGREE TO BEGIN
PULLING TOWARDS MY 2 REQUESTS THUS FAR TO HAVE DENTURES MADE.

Relief Sought (State what you want):  I WANT TO BE APPROVED TO HAVE BADLY WORN / ALL TEETH EVENTUALLY
PULLED, AS ALL OTHER INMATES REQUESTS FOR DENTURES TO BE MADE ARE GRANTED.

Inmate's Signature: Daniel F. Slonaker    (The inmate may attach 1 8.5 x 11 sheet if necessary at this level only)

**Unit Manager's Response** (attach additional sheet if needed)

Accepted___  ✓    Rejected___   Reason for rejection:_____   Date:_____

Response on Merits if accepted:  Mr. Slonaker, I've reviewed your dental and medical records. you were last seen by
r. Kennedy on 3/8/17 and she discussed with you that currently your condition does not indicate
slid reason for full extraction of your teeth and denture replacement. If your condition
changes, she would re-evaluate you for re-consideration. That
with DOC approval and personal payment of expenses, you could possibly seek outside
dental treatment since there is no valid reason for dental extraction
or treatment now.

Signature: Warden KW, HSA 3/24/17

Resolved:_____ (If so initial and give copy to unit manager)    Appealed to Warden/Administrator D.F.S. (initial) Dates: 3/28/2017

If no response at initial level is included the inmate certifies that he/she has tendered this grievance as indicated above and no response has been issued at that level within the time frames set forth in Policy Directive 335.00

Inmate's Signature: _____    Date _____

**Action by Warden/Administrator:**

Accepted ✓    Rejected___   Reason for rejection:_____   Date:_____

Response on Merits if accepted: ___ Remand to Unit for further action  ✓ Affirm and/or deny grievance ___ Grant the Grievance as specified

Comments _____   HSA

Warden/Administrator's Signature: [signature]    APR 1 0 2017    (Attach additional sheet if necessary)
Date

Resolved:_____ (If so initial and give copy to unit manager)    Appealed to Commissioner D.F.S. (initial)

**RECEIVED**
APR 0 3 2017
WARDEN'S OFFICE
MOCC

If no response at Warden/Administrator's level is included, the inmate certifies that he/she has tendered this grievance as indicated above and no response has been issued at that level within the time frame set forth in Policy Directive 335.00

Inmate's Signature: _____    Date _____

**Action by Commissioner:**

cepted___    Rejected___   Reason for rejection:_____   Date:_____

sponse on Merits if accepted: ___ Affirm Warden/Administrator and deny grievance  (Affix final stamp) ___ Other, memo attached.

page 17 of 22
EXHIBIT 1

**SUPPLEMENT TO GRIEVANCE NO.** ___ - _Macc_ - _St_ - _55_

I have used the Medical Services Request procedure [twice in the last years time] as the dental technician as did my last teeth cleaning related I should direct said dental needs to the dental department, (as I did to note how I wanted to have all my teeth pulled), towards the desired end results of getting some dentures made.

Each time I was seen by the Dental Supervisor Jean Kennedy that related I should be glad I still have some 16 teeth left, (even though I have some 4 as I have been so badly ground down to below the gum line); but she has adamantly refused to agree to approve to have any of my teeth pulled. Unless, (she further stipulated), I should consent to paying for any such dental work.

I purport it is only a matter of time before roots of the worst of my badly ground teeth will become exposed or some other emergent work, (such as oral surgery will be required), to cut the noted badly worn teeth out of my gums. I further offered in my medical service request(s) [and again now] how I suffer pain and discomfort from such a loosely fitting bite that I will often draw blood from biting my tongue or cheeks from a number of teeth as have knife sharp edges beveled from their being honed against their other adjacent teeth.

I can only be content knowing I have no substantial means of money to be able to pay for any such possible as I again note is about inevitable of emergent dental work will need to be done. With about the only comfort I can gain from the pain and discomfort as I have already have suffered and/or continue to suffer from; is trusting that the Dental Department Supervisor Jean Kennedy may be found culpable due to any and all obvious of blatant negligence issues as I expect in the future will develop due to her intentionally overlooking, trying to disregard my emergent dental needs. As may be then addressed in an appropriate forum of whatever court of law may grant the proper jurisdiction for such points of law; towards appropriate rulings derived from, (the facts as are now being evidenced), in order to be appropriately ruled upon at that potential future time.

Please take all the foregoing into consideration as I implore all parties to consider all as I am now formally in writing requesting for remedies to be provided. That my request(s), (for not only potentially troublesome), but for all my teeth to be pulled, (or be scheduled to be pulled by an oral surgeon as may be required), will be honored. Towards the desired end result that I mainly have requested the last two times, (having money deducted from my inmate spending account for the nurse calls to refer me to), the Dental Department ~~setting~~ to have dentures to be approved and be made for me.

_3/14/2017_
Dated

_Daniel F. Slonaker_ # 3469200
Daniel F. Slonaker # 3469200

CONTINUED EXHIBIT-L

EXHIBIT 2

Policy Directive 424.01
01 January 2004
Attachment #1

## INMATE MEDICAL SERVICES REQUEST
(Inmate to fill out top of Part A)

PART A:

NAME __SLONAKER, DANIEL F.__   DATE __5/10/2017__

NUMBER __3463200__   HOUSING UNIT __STUART 134__

REASON FOR REQUEST: EMERGENCY DENTAL ONE OF TWO FRONT TEETH PUSHED BY BOTTOM ONES CAME OUT DAYS AGO. MY NEW BITE PUTS PRESSURE ON THE OTHER LEFT TOP FRONT TOOTH GROUND DOWN BELOW THE GUM LINE CREATING EMERGENT SITUATION OF SENSITIVITY FROM THE NEAR TO BE EXPOSED ROOT PAINFUL WHEN I CAN'T HELP BITING INTO IT. NEED ORAL SURGEON SCHEDULED TO CUT OUT OFFENDING TOOTH/. TEETH.

RESPONSE (To be completed by medical personnel)

_____

_____

_____

_____

_____

Medical Personnel Signature                     Date

**************************DETACH HERE***************************

PART B:

NAME _____   DATE _____

NUMBER _____   HOUSING UNIT _____

I understand that there will be a charge for medical services. I request the following medical services and understand that me institutional account or voluntary savings account will be charged for these services.

| | | | | |
|---|---|---|---|---|
| [ ] | 1. | Nurse Sick Call | @ | $3.00 |
| [ ] | 2. | Nurse Sick Call with a Referral to a Doctor | @ | $3.00 |
| [ ] | 3. | Nurse Sick Call ($3.00) with an Inmate Request | | |
| | | Referral to a Doctor ($2.00) | @ | $5.00 |
| [ ] | 4. | Non-Emergency Visit for Treatment by a Nurse | @ | $3.00 |
| [ ] | 5. | Self-Inflicted or Self-Induced Injury or Illness Requiring a Nurse | @ | $3.00 |
| [ ] | 6. | Self-Inflicted or Self-Induced Injury or Illness Requiring a Doctor | @ | $5.00 |
| [ ] | 7. | Missed, Non-Excused Scheduled Medical Appointment | @ | $3.00 |
| [ ] | 8. | A new complaint presented at an appointment that is not related | | |
| | | to the original appointment | @ | $3.00 |
| [ ] | 9. | Scheduled, Non-Referred Doctor or Optometrist Call | | |
| | | (Medical staff sets up scheduled appointment for | | |
| | | doctor or optometrist because an inmate requested the | | |
| | | service.) | @ | $5.00 |
| [ ] | 10. | Non-Emergency Scheduled Dental Visit | @ | $5.00 |
| [ ] | 11. | Prescription Fees Per Prescription (excluding chronic care prescriptions | | |
| | | for chronic care patients) | @ | $2.00 |
| [ ] | 12. | Over the Counter Medications -- Priced as established | | |
| | | according to standard marketing prices. Separate policy | | |
| | | and procedure shall establish doses and procedures for issue | | |
| | | and purchase | | |
| [ ] | 13. | No Charge | | |

*Note: At no time will any Medical Services be denied to any inmate who cannot pay for these services.*

_____                     _____
Inmate's Signature                               Staff Witness

page 19 of 22
EXHIBIT 2

EXHIBIT 3

**Policy Directive 424.01**
**01 January 2004**
**Attachment #1**

## INMATE MEDICAL SERVICES REQUEST
(Inmate to fill out top of Part A)

PART A:  *  *  DENTAL  *  EMERGENCY  *

NAME SLONAKER, DANIEL F.          DATE 6|10|2018
NUMBER 346.9200       HOUSING UNIT PINE # 123

REASON FOR REQUEST: I HAVE TWO SEVERELY COMPROMISED TEETH REMAINING IN
MY TOP RIGHT QUADRANT WHERE I AM UNABLE TO CHEW FOOD DUE TO EXCRUTIATING
PAIN I EXPERIENCE TRYING TO BITE WITH BOTH/ONE TOOTH GROUND BELOW MY
GUM LINE I RELATED ABOUT 4/30/18. NOW I HAVE INCREASING PAIN/INFECTION
IN THE ADJACENT PARTIAL TOOTH NEEDS ADDRESSED AS SOON AS YOU CAN SCEDULE
                                              ME TO BE SEEN AT THIS EMERGENCY TIME!

RESPONSE (To be completed by medical personnel)

_____
_____
_____
_____
_____
_____

Medical Personnel Signature                          Date

*************************DETACH HERE*************************

PART B:

NAME_____ DATE_____
NUMBER_____ HOUSING UNIT_____

I understand that there will be a charge for medical services. I request the following medical services and understand that me institutional account or voluntary savings account will be charged for these services.

| | | | | |
|---|---|---|---|---|
| [ ] | 1. | Nurse Sick Call | @ | $3.00 |
| [ ] | 2. | Nurse Sick Call with a Referral to a Doctor | @ | $3.00 |
| [ ] | 3. | Nurse Sick Call ($3.00) with an Inmate Request Referral to a Doctor ($2.00) | @ | $5.00 |
| [ ] | 4. | Non-Emergency Visit for Treatment by a Nurse | @ | $3.00 |
| [ ] | 5. | Self-Inflicted or Self-Induced Injury or Illness Requiring a Nurse | @ | $3.00 |
| [ ] | 6. | Self-Inflicted or Self-Induced Injury or Illness Requiring a Doctor | @ | $5.00 |
| [ ] | 7. | Missed, Non-Excused Scheduled Medical Appointment | @ | $3.00 |
| [ ] | 8. | A new complaint presented at an appointment that is not related to the original appointment | @ | $3.00 |
| [ ] | 9. | Scheduled, Non-Referred Doctor or Optometrist Call (Medical staff sets up scheduled appointment for doctor or optometrist because an inmate requested the service.) | | |
| [ ] | 10. | Non-Emergency Scheduled Dental Visit | @ | $5.00 |
| [ ] | 11. | Prescription Fees Per Prescription (excluding chronic care prescriptions for chronic care patients) | @ | $5.00 |
| [ ] | 12. | Over the Counter Medications – Priced as established according to standard marketing prices. Separate policy and procedure shall establish doses and procedures for issue and purchase | @ | $2.00 |
| [ ] | 13. | No Charge | | |

*Note: At no time will any Medical Services be denied to any inmate who cannot pay for these services.*

Inmate's Signature                          Staff Witness

EXHIBIT 4

Policy Directive 424.01
01 January 2004
Attachment #1

### INMATE MEDICAL SERVICES REQUEST
(Inmate to fill out top of Part A)

PART A: ✱ EMERGENCY DENTAL ✱ ISSUE(S) ✱

NAME SLONAKER, DANIEL F.    DATE 7/14/2018

NUMBER 3469200    HOUSING UNIT PINE HALL 114

REASON FOR REQUEST: I JUST HAD MY LAST REMAINING UPPER LEFT QUADRANT TOOTH SHEER OFF LEAVING ABOUT AN EIGHT OF AN INCH OF A JAGGED EDGE PENTTY SHAPED SPIKE PEEKING ABOVE THE GUM LINE, ROOT ALREADY EXPOSED, OBVIOUSLY NEEDS SCHEDULED TO BE PULLED. AS WELL LAST RIGHT UPPER QUADRANT TOOTH INFECTION CALMED FOR NOW AS I TAKE ABOUT 10 MOTRIN DAILY FOR THAT AND PINCHED SCIATIC PAIN.

RESPONSE (To be completed by medical personnel)

_____
_____
_____
_____
_____
_____

Medical Personnel Signature _____    Date _____

**********************DETACH HERE**********************

PART B:

NAME_____    DATE_____

NUMBER_____    HOUSING UNIT_____

I understand that there will be a charge for medical services. I request the following medical services and understand that me institutional account or voluntary savings account will be charged for these services.

| | | | | |
|---|---|---|---|---|
| [ ] | 1. | Nurse Sick Call | @ | $3.00 |
| [ ] | 2. | Nurse Sick Call with a Referral to a Doctor | @ | $3.00 |
| [ ] | 3. | Nurse Sick Call ($3.00) with an Inmate Request Referral to a Doctor ($2.00) | @ | $5.00 |
| [ ] | 4. | Non-Emergency Visit for Treatment by a Nurse | @ | $3.00 |
| [ ] | 5. | Self-Inflicted or Self-Induced Injury or Illness Requiring a Nurse | @ | $3.00 |
| [ ] | 6. | Self-Inflicted or Self-Induced Injury or Illness Requiring a Doctor | @ | $5.00 |
| [ ] | 7. | Missed, Non-Excused Scheduled Medical Appointment | @ | $3.00 |
| [ ] | 8. | A new complaint presented at an appointment that is not related to the original appointment | @ | $3.00 |
| [ ] | 9. | Scheduled, Non-Referred Doctor or Optometrist Call (Medical staff sets up scheduled appointment for doctor or optometrist because an inmate requested the service.) | @ | $5.00 |
| [ ] | 10. | Non-Emergency Scheduled Dental Visit | @ | $5.00 |
| [ ] | 11. | Prescription Fees Per Prescription (excluding chronic care prescriptions for chronic care patients) | @ | $2.00 |
| [ ] | 12. | Over the Counter Medications – Priced as established according to standard marketing prices. Separate policy and procedure shall establish doses and procedures for issue and purchase | | |
| [ ] | 13. | No Charge | | |

*Note: At no time will any Medical Services be denied to any inmate who cannot pay for these services.*

Inmate's Signature _____    Staff Witness _____

page 21 of 22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

**DANIEL F. SLONAKER #3469200,** Pro-Se,

        Plaintiff,

**vs.**

                                **CIVIL ACTION NO.** 2:18-cv-01173

**JEAN KENNEDY,**
**PAM GIVEN,**
**SANDRA MAY,**
**TAMMY MCGRAW,**
**RALPH TERRY,**
**DANIEL CONN,**
**BETSY JIVIDEN,**

        Defendant(s).


## <u>CERTIFICATE OF SERVICE</u>

        I, Daniel F. Slonaker #3469200, appearing Pro-Se, hereby certify that I have served the

foregoing Complaint(s) and Summon(s) upon the defendant(s) by depositing true copies of the same

in the United States Mail, postage prepaid, upon all the afore noted defendant(s) on:

        <u>7 / 17 / 2018</u>        Daniel F. Slonaker #3469200, Pro-Se
            Dated              Daniel F. Slonaker #3469200, Pro-Se
                                  Mt. Olive Correctional Complex
                                  1 Mountainside Way / P.O. Box 5
                                  Mt. Olive, WV   25185-1000