UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DANIEL F. SLONAKER,

       Plaintiff,

v.                            Civil Action No. 2:18-cv-01173

JEAN KENNEDY, D.D.S.,
BETSY JIVIDEN, and DONNIE AMES,

       Defendants.


MEMORANDUM OPINION AND ORDER


       Pending are defendant Jean Kennedy's motion for

summary judgment (ECF No. 36), filed April 21, 2020, and

defendants Betsy Jividen and Donnie Ames' motion for summary

judgment (ECF No. 38), filed April 27, 2020.


       This action was previously referred to United States

Magistrate Judge Dwane L. Tinsley, who on November 23, 2020,

submitted a Proposed Findings and Recommendation ("PF&R") for

disposition of the pending motions pursuant to 28 U.S.C. §

636(b)(1)(B).  ECF No. 43.  The PF&R determined that Kennedy, a

dentist employed by Wexford Health Sources, Inc. to provide

dental care for prisoners at Mount Olive Correctional Complex

where plaintiff Daniel Slonaker is incarcerated, is entitled to

judgment as a matter of law on the plaintiff's 42 U.S.C. § 1983

Eighth Amendment deliberate indifference claim alleged against

her.  Id. at 5-10.  The PF&R also found that Slonaker's § 1983
Eighth Amendment claim alleging supervisor liability against
Jividen and Ames should be dismissed.  Id. at 10-14.  Inasmuch
as the Magistrate Judge found the defendants to be entitled to
judgment as a matter of law on the outstanding claims asserted
in this action, he recommended that the motions for summary
judgment be granted with the action to be dismissed from the
court's docket.  Id. at 14.[1]

The PF&R set a fourteen-day objection period, with
three additional days allocated for mailing.  Id. at 14.
Slonaker thereafter submitted a letter-form motion, filed by the
Clerk on December 12, 2020, requesting an additional seventeen
days to object.  ECF No. 45.  The court granted a seventeen-day
extension on December 10, 2020.  ECF No. 46.

Slonaker's initial typed objection, which contains
multiple corrections made by pen or pencil, was filed by the
Clerk on December 14, 2020.  ECF No. 47.  He subsequently
submitted an amended objection, filed by the Clerk on December

---

[1]     Adopting a November 7, 2019 PF&R (ECF No. 30), the court
previously dismissed the claims alleged against defendants Tami
McGraw, Pam Givens, Sandra May, and Daniel Conn in a memorandum
opinion and order entered December 4, 2019.  ECF No. 34.  Only
the Eighth Amendment claims alleged against Kennedy, Jividen,
and Ames remain pending at this time.

22, 2020, requesting that the court "accept a typo[-]corrected original and two copies to replace the deficient lone original" he initially sent.  ECF No. 48-2 (Cover Page to Amended Objection).  The court has examined the two sets of objections, and it appears that the second varies from the first only in that it corrects certain typographical mistakes.

As for the substance of his objection, Slonaker essentially asserts that the Magistrate Judge failed to consider several contentions regarding his claim against Kennedy, which in the aggregate, present disputed material facts such that summary judgment should be denied.  ECF No. 48, at 2-4.  He claims that the PF&R overlooked the fact that Kennedy decided to extract his #9 and #10 teeth during the same appointment on August 22, 2017, when both were infected but refused to extract both his #5 and #6 teeth on June 13, 2018 when they were both infected.  Id. at 2-3.  Instead, Kennedy "called the plaintiff back up the next day," asked which tooth (#5 or #6) he would like to have pulled, and only pulled the #5 tooth during a June 14, 2018 appointment.  Id. at 3.

Slonaker also claims that the Magistrate Judge omitted the fact that Kennedy stated after x-raying his teeth during the June 13, 2018 appointment that "he and a hundred other inmates

3

would not tell her how to do her job," and told him to, "[g]et out of her chair [and] office now, or receive a write-up!" Id. at 3.  As a result of Kennedy's actions, Slonaker claims he was not "given proper treatment for two[-]and[-]a[-]half weeks [during which] he suffered two bouts of super infections." Id.

Slonaker generally asks that the court account for the material facts of the case as documented in the complaint and Slonaker's subsequent filings. Id. at 3-4.  He also requests that the court order the production of the plaintiff's entire medical file.[2] Id. at 3.

Upon an objection, the court reviews a PF&R de novo. Specifically, "[t]he Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (first alteration added) (quoting 28 U.S.C. § 636(b)(1)).

---

[2]    Slonaker does not clarify why any specific documents from his medical file apart from the ones that already appear in the record would support his claims.  He only indicates that his entire medical file would generally prove the truthfulness of his assertions and demonstrate that medical and dental personnel were aware of his serious medical needs.  ECF No. 48, at 3-4.

4

Slonaker does not object to the PF&R's findings regarding the summary judgment motion of Jividen and Ames.[3] Specifically, the Magistrate Judge determined that: Slonaker failed to exhaust his administrative remedies against Jividen and Ames as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a); there was no evidentiary basis for assessing supervisor liability under § 1983 against Jividen and Ames; and notwithstanding these issues, Jividen and Ames are entitled to qualified immunity.  ECF No. 43, at 10-14.  The court agrees with the Magistrate Judge's analysis, and there being no objection thereto, summary judgment will be entered in favor of Jividen and Ames.

Insofar as Slonaker objects that the PF&R did not account for some of the issues raised in the complaint concerning Kennedy's dental care (ECF No. 2), the court notes that the pleading is a verified complaint, signed and sworn under penalty of perjury.  See Goodman v. Diggs, ---F.3d----, 2021 WL 280518, at *1 n. 2 (4th Cir. 2021).  As such, it is considered "the equivalent of an opposing affidavit for summary

---

[3]   In fact, Slonaker did not file a response to Jividen and Ames' motion for summary judgment.

judgment purposes, when the allegations contained therein are based on personal knowledge." Id. at *4 (quoting Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)).

Although the PF&R did consider some of the allegations of the verified complaint inasmuch as it acknowledged similar arguments raised in Slonaker's response to Kennedy's motion for summary judgment, it is not entirely clear whether it evaluated the verified complaint as a piece of evidence equivalent to an affidavit to the extent the allegations contained therein are based on personal knowledge. See ECF No. 43. Accordingly, the court will address Kennedy's motion for summary judgment de novo.

I.

Slonaker and Kennedy attest that the plaintiff saw Kennedy on March 8, 2017, and requested that the dentist give him dentures. ECF No. 2, at 6; ECF No. 36-1 (Affidavit of Jean Kennedy, D.D.S.), at ¶ 3. She declined, informing him that "his teeth were in such a condition that it was not advisable from a dental standpoint to pull all of his teeth and give him dentures." ECF No. 36-1, at ¶ 3; see also ECF No. 36-3 (Dental Inmate and Registration History documenting the March 8, 2017 appointment).

Slonaker subsequently filed a March 14, 2017 grievance complaining of the dentist's refusal to give him dentures for his worn teeth.  ECF No. 2, at 17 (March 14, 2017 Grievance). In the grievance, he requested that the prison approve the extraction of "badly worn/all teeth" for the purposes of obtaining dentures, "as all other inmates['] requests for dentures to be made are granted."  Id.  The unit manager denied the grievance, and the warden affirmed this decision on appeal. Id.

Slonaker subsequently had an appointment with Kennedy on July 6, 2017, during which the plaintiff rejected the dentist's offer to fix a filling in his #18 tooth and again requested dentures.  ECF No. 36-1, at ¶ 4.  Kennedy refused to implant dentures inasmuch as, "his teeth were asymptomatic and restorable through fillings, [and] it was in his best interest to preserve them and the associated bones."  Id.; see also ECF No. 36-4 (Dental Progress Note documenting the July 6, 2017 appointment).  Kennedy treated Slonaker on August 17, 2017, when she determined that his #9 and #10 teeth needed to be extracted after finding, "severe occlusion attrition [that] induced chronic apical periodontitis w/ PARLS and localized gingival,

7

facial tissue swelling."[4]  ECF No. 36-5 (Dental Progress Note documenting the August 17, 2017 appointment); accord ECF No. 36-1, at ¶ 5.  She extracted the #9 and #10 teeth on August 22, 2017.  ECF No. 36-1, at ¶ 5.

Slonaker had another appointment with Kennedy on December 20, 2017, regarding his #18 tooth and consented to the dentist's decision to put in a new filling.  ECF No. 36-1, at ¶ 6; ECF No. 36-7 (Dental Progress Note documenting the December 20, 2017 appointment).  On March 29, 2018, Kennedy determined that Slonaker's #11 tooth had "severe occlusion attrition [that] induced irrev. pulpitis."[5]  ECF No. 36-8 (Dental Progress Note documenting the March 29, 2018 appointment).  She extracted the #11 tooth on April 9, 2018, but states in her affidavit that

---

[4]    Periodontitis, also known as gum disease, "is a serious gum infection that damages the soft tissue and, without treatment, can destroy the bone that supports your teeth."  Periodontitis: Symptoms and Causes, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/periodontitis/symptoms-causes/syc-20354473 (last visited February 1, 2021).

[5]    "Pulpitis is inflammation of the dental pulp resulting from untreated caries, trauma, or multiple restorations."  Bernard J. Hennesy, Pulpitis, Merck Manual Professional Version, https://www.merckmanuals.com/professional/dental-disorders/common-dental-disorders/pulpitis (last visited February 1, 2021).  Irreversible pulpitis involves, "[s]welling inside the rigid encasement of the dentin [that] compromises circulation, making the pulp necrotic, which predisposes to infection."  Id.

"[e]ven at this time, it was still not my dental recommendation that Plaintiff should get dentures."  ECF No. 36-1, at ¶ 7; accord ECF No. 36-9 (Dental Progress Note documenting the April 9, 2018 appointment).

The notes from a June 13, 2018 appointment indicate that Slonaker complained of pain in his #5 tooth and that Kennedy determined extraction to be necessary due to, "severe attrition and mod/ distal bone loss."  ECF No. 36-10 (Dental Progress Note documenting the June 13, 2018 appointment); accord ECF No. 36-1, at ¶ 8.  Kennedy advised Slonaker, who had again requested dentures, that "nothing had significantly changed since March 8, 2017, to warrant getting dentures" and extracted the #5 tooth on June 14, 2018.  ECF No. 36-1, at ¶ 8; accord ECF No. 36-10 (Dental Progress Note documenting the June 13, 2018 appointment); ECF No. 36-11 (Dental Progress Note documenting the June 14, 2018 appointment).

On June 26, 2018, Kennedy treated Slonaker, who complained of abscess, pain, and infection in the #5 and #6 tooth areas.  ECF No. 36-12 (Dental Progress Note documenting the June 26, 2018 appointment).  Kennedy's notes from this appointment indicate that tooth #5, extracted on June 14, 2018, had significant occlusion attrition "but was never 'abscessed'

9

or otherwise actively infected." Id. This is consistent with
the notes from the June 13, 2018 appointment inasmuch as they
indicate tooth #5 attrition and bone loss but no infection. ECF
No. 36-10. The June 26, 2018 notes also state that tooth #6
exhibited significant occlusion attrition but that the patient's
"reports of infection [] are not assoc. with June 2018 dental
complaints." ECF No. 36-12. She advised Slonaker that he
should consult a medical care provider, as he might have
contracted an upper respiratory infection. Id.; ECF No. 36-1,
at ¶ 9.

        The June 26, 2018 notes further document that Slonaker
"became angry and disruptive by frequently interrupting [her]"
as she communicated this advice. ECF No. 36-12. He was
dismissed from the dental clinic, but he "refused to get out of
the dental chair." Id. The notes indicate that security
noticed Slonaker's anger and "asked if [she] was OK." Id. When
Slonaker eventually left the dental clinic, he "threatened to
file some sort of federal lawsuit, to which [Kennedy] had no
reply." Id.

        Slonaker's verified complaint states that he asked
Kennedy during the June 26, 2018 appointment "if there was any
possible way she would consider pulling both of my bad teeth

that day; seeing they were the last 2 adjacent, compromised
teeth as would both need to come out in order for a top partial
denture to be able to eventually be fitted . . . ." ECF No. 2,
at 10.  After she examined his teeth, Slonaker states she told
him, "Nothing was going to happen today," and that he responded,
"Your [sic, You're] kidding right?"  Id.  According to Slonaker,
Kennedy responded, "Do you not comprehend, Do you want a
write-up for disobeying an order, Get out of my chair and office
now!"[6]  Id.

        Slonaker was seen by PA-C Sandra May on July 2, 2018.
ECF No. 36-13 (Patient Note documenting the July 2, 2018
appointment with May).  May found that Slonaker did not have an
upper respiratory infection and indicated that she would refer
him back to Kennedy for tooth pain and gum irritation.  Id.  The
verified complaint states that Kennedy saw Slonaker again on the
afternoon of July 2, 2018, and took four x-rays of his "exposed
root of tooth, ground down below the gum line."  ECF No. 2, at
12.  Slonaker claims that Kennedy declared, "You have no
infection present, and further you and 100 inmates just like you

---

[6]     The objection to the PF&R asserts that these statements
were made during the June 13, 2018 appointment, but the verified
complaint, as well as Kennedy's notes, indicate that they were
likely made during the June 26, 2018 appointment.

11

will not dictate as to how and when I will do my job . . . ."[7]
Id.  Kennedy does not reference this July 2, 2018 follow-up
appointment in her affidavit but states that following the
appointment with Sandra May, "Plaintiff was not in a position
where it was advisable from a dental standpoint to get
dentures."  ECF No. 36-1, at ¶ 9.  Additionally, no notes from
this July 2, 2018 dental appointment appear in the record.

     The verified complaint goes on to reference a July 13,
2018 incident where Slonaker failed to notice an open cell door,
which he turned into and "sheer[ed] that last remaining top left
quadrant tooth off," leaving "only about an eighth of an inch of
a pen[-]shaped jagged tip [with root exposed] above the gum line
remaining."  ECF No. 2, at 13 (third alteration in original).
Slonaker has provided an Inmate Medical Services Request form
documenting this incident, although the form bears no indication
from prison personnel that it was ever submitted to them.  ECF
No. 2, at 20 (Inmate Medical Services Request form).  No
subsequent dental records reference this incident.

---

[7]     As noted above, the objection to the PF&R indicates that
this occurred on June 13, 2018.  The verified complaint states
that it occurred on July 2, 2018.

12

The plaintiff dated his verified complaint July 17, 2018, and it was filed by the Clerk on July 20, 2018.  ECF No. 2.  In addition to monetary compensation, the verified complaint seeks a declaration that the acts or omissions of the defendants violated his civil and constitutional rights.  Id. at 15.  As a result of such a declaration, "Plaintiff expects a sufficient amount of time to be allowed for his gums to properly heal and be fitted into both upper and lower dentures as [sic, after?] timely extraction(s) of not only his last two upper compromised teeth, causing him much suffering, and bottom teeth also."  Id. (second alteration in original).

According to her affidavit, Kennedy again saw the plaintiff on July 23, 2018.  ECF No. 36-2, at ¶ 10.  The affidavit and her notes indicate that she determined it appropriate to extract the #6 and #13 teeth; however, Slonaker requested that only one tooth be extracted at a time.  Id.; ECF No. 36-14 (Dental Progress Note documenting the July 23, 2018 appointment).  Specifically, her notes document that the #6 and #13 teeth both exhibited severe attrition that required extraction.  ECF No. 36-14.  She extracted the #6 tooth on July 25, 2018, and pulled the #13 tooth on August 7, 2018.  ECF No. 36-2, at ¶ 10; ECF No. 36-15 (Dental Progress Note documenting

13

the July 25, 2018 appointment); ECF No. 36-16 (Dental Progress Note documenting the August 7, 2018 appointment).

Kennedy avers that "[a]ll of the teeth extracted from August 22, 2017, to August 7, 2018, were Plaintiff's top teeth. After the #13 tooth was extracted on August 7, 2018, it was appropriate . . . to start fitting Plaintiff for a top denture." Id. at ¶ 11. Kennedy further states that "Plaintiff never exhibited any dental problems with his bottom teeth[,] and none of his bottom teeth have needed extracted. Plaintiff has no dental need for a bottom denture at this time." Id. at ¶ 13.

The affidavit and notes from the August 7, 2018 appointment indicate that three months' time was necessary for Slonaker to heal prior to fitting the top denture. Id.; ECF No. 36-16. Kennedy affirms that Slonaker was fitted for a top denture on November 14, 2018, which was implanted on March 13, 2019. ECF No. 36-1, at ¶ 12; see also ECF No. 36-17 (Dental Progress Note documenting the November 14, 2018 appointment); ECF No. 36-18 (Dental Progress Note documenting the March 13, 2019 appointment).

Kennedy affirms that she made the decision to fit the plaintiff for a top denture before she, "was even aware that the lawsuit had been filed." ECF No. 36-1, at ¶ 11. Additionally,

14

Kennedy's summons in this action was issued on April 15, 2019,
and she was served with process on May 15, 2019.  ECF No. 11;
ECF No. 12.  There is no indication in the record that Kennedy
had notice of the lawsuit prior to service of process.  Thus,
absent any evidence to the contrary, it appears that Kennedy
made the decision to fit the top denture on August 7, 2018,
fitted the denture on November 14, 2018, and implanted the
denture on March 13, 2019, prior to learning of this action.

II.

Summary judgment is appropriate only "if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to
establish the elements of a party's cause of action.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News
& Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d
570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact
exists if, in viewing the record and all reasonable inferences
drawn therefrom in a light most favorable to the non-moving
party, a reasonable fact-finder could return a verdict for the
non-moving party.  Anderson, 477 U.S. at 248.  Although the
court views the evidence in the light most favorable to the

15

nonmoving party, "that party must produce evidence that goes beyond '[c]onclusory or speculative allegations' and [must] rel[y] on more than 'a mere scintilla of evidence' to withstand summary judgment." Hodgin v. UTC Fire & Sec. Americas Corp., Inc., 885 F.3d 243, 252 (4th Cir. 2018) (first alteration in original) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)).

### III.

Kennedy argues in her brief in support of summary judgment that summary judgment is appropriate on Slonaker's sole § 1983 Eighth Amendment claim alleged against her inasmuch as, "Plaintiff cannot set forth any evidence to support that objectively he had an infection which required medical treatment" on June 26, 2018, and July 2, 2018, and "Plaintiff has presented no evidence that his bottom teeth were in a condition to consider it a serious medical need."  ECF No. 37, at 9-10.  Kennedy therein further asserts that she rendered appropriate treatment when extracting six top teeth and filling the #18 tooth; her treatment of the patient did not fall below the standard of care of a practicing dentist; and the plaintiff's claim amounts to "nothing more [than] a disagreement between [Slonaker and] the treatment plan set forth by" her.

<u>Id.</u> at 10-11.

In addition to the issues raised in the objection noted above, namely, the June 13, 2018 decision to only pull the #5 tooth on June 14, 2018 and the comments made by Kennedy, Slonaker responds that the dentist's reasoning was "questionable" insofar as she decided to extract teeth one-by-one to preserve the remaining teeth and their associated bones rather than pull them all and fit him for dentures.  ECF No. 41, at 2.  He claims that Kennedy herself ground down the #11 tooth "to the gum line," which required its extraction after its roots shifted.  <u>Id.</u>  He emphasizes that the #5 and #6 teeth should have been extracted together inasmuch as they were both infected and concedes that "there may not be genuine issues of material fact" if the dentist had agreed to pull both of them. <u>Id.</u> at 3.  Slonaker also acknowledges his request that Kennedy pull the #6 and #13 teeth on different dates, which he believed to be necessary so that he could continue to chew with one side of his mouth.  <u>Id.</u>

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104

(1976).  To succeed on such a claim, a plaintiff must offer
"proof that the medical need in question is objectively
'serious,' and that the defendant acted with subjective
indifference, meaning he or she 'kn[ew] of and disregard[ed] an
excessive risk to inmate health or safety.'"  Adams v. Ferguson,
884 F.3d 219, 227 (4th Cir. 2018) (alterations in original)
(quoting Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994)).

     A "serious medical need" is "one that has been
diagnosed by a physician as mandating treatment or one that is
so obvious that even a lay person would easily recognize the
necessity for a doctor's attention." Id. (quoting Iko v.
Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).  Further, the
subjective mental state required of a deliberately indifferent
actor is "more than mere negligence."  Farmer, 511 U.S. at 835.
It is instead "somewhere between negligence and purpose or
knowledge: namely, recklessness of the subjective type used in
criminal law."  Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101,
105 (4th Cir. 1995) (citing Farmer, 511 U.S. at 835).  This
means that:

     a prison official cannot be found liable under the
     Eighth Amendment for denying an inmate humane
     conditions of confinement unless the official knows of
     and disregards an excessive risk to inmate health or
     safety; the official must both be aware of facts from

18

which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw the
inference.

Farmer, 511 U.S. at 837.  "Under this standard, mere
'[d]isagreements between an inmate and a physician over the
inmate's proper medical care' are not actionable absent
exceptional circumstances."  Scinto v. Stansbury, 841 F.3d 219,
226-27 (4th Cir. 2016) (alteration in original) (quoting Wright
v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)); accord Russell
v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of
medical judgment are not subject to judicial review.").

        The PF&R concluded that "Slonaker has presented no
concrete evidence of an actual infection that Kennedy failed to
treat, and he otherwise simply disagrees with her treatment
plan."  ECF No. 43, at 9.  After considering the evidence in the
record, including that contained in the verified complaint, the
court agrees.

        Slonaker's primary contention throughout this action
and the events pertaining thereto is that Kennedy should have
pulled all of his teeth and fitted dentures as early as March 8,
2017.  On March 14, 2017, he filed a grievance to that effect,
requesting that "badly worn/all teeth" be extracted such that he
could get dentures.  He repeatedly requested such treatment

19

during appointments over the following seventeen months.  The verified complaint likewise indicates that he sought top and lower dentures as of the date he filed this action, July, 17, 2018.

Kennedy has offered testimony that no dentures were dentally advisable prior to August 7, 2018, the date she pulled the #13 tooth, whereupon she began the process of fitting the patient for a top denture.  She has additionally stated that Slonaker has no dental problems with his bottom teeth and that a bottom denture is not advisable.

And although Kennedy's notes indicate that Slonaker threatened a lawsuit during the June 26, 2018 appointment, she attests that she made the decision to fit the plaintiff for a top denture prior to learning of this action.  She also avers that the top denture was completed on March 13, 2019, which is prior to the date she was served with process, May 15, 2019.  As noted, the evidence in the record suggests that Kennedy decided to implant a top denture, fitted the denture, and implanted the denture prior to learning of this action.

Insofar as his Eighth Amendment claim concerns the general decision to continue to extract top teeth one-by-one to attempt to preserve what teeth were left, the court concludes

20

that Slonaker's arguments are nothing more than disagreements with Kennedy's medical treatment plan, which is not cognizable under § 1983 absent exceptional circumstances not present in this action.  Additionally, there was plainly no Eighth Amendment violation for her decision to refuse a bottom denture inasmuch as she has averred that his bottom teeth have never exhibited dental problems and there is no evidence that contradicts this statement.

To the extent Slonaker contends that Kennedy was deliberately indifferent to his serious medical needs when she refused to pull the #6 tooth along with the #5 tooth even though both were infected, the court finds this argument to be without merit.  There is no evidence that either tooth was infected. Kennedy did not find an infection of the #6 tooth on June 13, 2018 or June 14, 2018, when she treated the #5 tooth.  In fact, neither her affidavit, nor her notes from appointments indicate that Slonaker even complained of pain associated with the #6 tooth on those dates.  She likewise found no infection when she examined the #6 tooth on June 26, 2018.

And although Kennedy determined that it was necessary to extract the #5 tooth on June 14, 2018, her notes from the June 26, 2018 appointment state that the #5 tooth was never

"actively infected." ECF No. 36-12.  This is consistent with her
June 13, 2018 notes that only document attrition and bone loss
relating to the #5 tooth.  Moreover, Sandra May found no upper
respiratory infection that could have potentially related to
mouth pain when she examined the plaintiff on July 2, 2018.

It is evident from the affidavit of the defendant as
well as the dental and medical records relating to Slonaker's
care that Kennedy exercised her professional judgment as a
dentist when she treated the plaintiff for pain resulting from
the #5 and #6 teeth.  There is no indication that she was
deliberately indifferent to his serious medical needs concerning
these teeth or any others.   Moreover, the record does not
suggest that her decisions fell below a professional standard of
care.  But even if they did, such malpractice is not sufficient
for an Eighth Amendment deliberate indifference claim under §
1983.  See Estelle, 420 U.S. at 106 ("Medical malpractice does
not become a constitutional violation merely because the victim
is a prisoner.").

The court also concludes that the statements made by
Kennedy to Slonaker on June 26, 2018, and July 2, 2018, as
presented in the verified complaint, do not support his § 1983
Eighth Amendment claim absent any other indication in the record

that the dentist was deliberately indifferent to his serious medical needs.  "Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); accord Johnson v. Lanham, 9 F.3d 1543, 1993 WL 469160, at *3 (4th Cir. Nov. 15, 1993) (unpublished table opinion) (same).  It is clear, at least with regard to the June 26, 2018 appointment, that Kennedy chastised Slonaker after he was disruptive and refused to leave her dental chair.  Notwithstanding this point, none of her comments would support his § 1983 claim without a separate indication that she was deliberately indifferent to his serious medical needs.  Indeed, the record reflects that she routinely provided dental care according to her professional judgment from March 8, 2017 through March 13, 2019, and implanted a top denture when she determined such treatment to be dentally advisable.

Finally, the court finds that supplementation of the record with the plaintiff's entire medical file is not necessary.  Slonaker has not asserted by "affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" to Kennedy's motion

23

for summary judgment (or that of Jividen and Ames) as provided
for by Federal Rule of Procedure 56(d).  Moreover, he has not
pointed to any specific missing documents that could support the
merits of his action.

Inasmuch as the plaintiff has failed to offer more
than a scintilla of evidence to support his Eighth Amendment §
1983 claim alleged against Kennedy, the court finds that she is
entitled to judgment as a matter of law.  Since Jividen and Ames
are also entitled to summary judgment, a final judgment shall
issue and this action will be dismissed.

## IV.  Conclusion

Accordingly, it is ORDERED as follows:

1.   That Slonaker's objection (ECF No. 47) and
amended objection (ECF No. 48) to the November 23, 2020 PF&R be,
and they hereby are, GRANTED to the extent they seek review of
the evidence in the record, including the verified complaint.
The objection and amended objection are otherwise OVERRULED.

2.   That the November 23, 2020 PF&R (ECF No. 43) be,
and it hereby is, ADOPTED and INCORPORATED to the extent it
recommends that summary judgment be entered in favor of Kennedy,
Jividen, and Ames.

3.    That Kennedy's motion for summary judgment (ECF No. 36) be, and it hereby is, GRANTED.

4.    That Jividen and Ames' motion for summary judgment (ECF No. 38) be, and it hereby is, GRANTED.

5.    That all claims having been resolved, this action be, and it hereby is, DISMISSED.  The Clerk is directed to remove this action from the court's docket.

The Clerk is directed to forward copies of this memorandum opinion and order to the plaintiff, all counsel of record, and the United States Magistrate Judge.

ENTER:  February 9, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

25